IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| M. FAISAL RASHID, | : | CIVIL ACTION |
|  | : | No. 07-1056 |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| SOVEREIGN BANCORP, INC., | : |  |
|  | : |  |
| Defendant. | : |  |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                JUNE 19, 2008

        Plaintiff M. Faisal Rashid ("Rashid") sues Sovereign
Bancorp, Inc. ("Sovereign"), his former employer for violation of
the Family and Medical Leave Act (FMLA) of 1993, 29 U.S.C. § 2601
et seq.  Because there are genuine issues of material fact as to
Rashid's claim against Sovereign, the motion for summary judgment
will be denied.


I.    BACKGROUND

    A.    <u>Facts</u>

        On September 9, 2002, Rashid was hired by Sovereign as
Manager of Performance and Variable Pay Metrics.  For
approximately the first two years of his employment, he reported
to John Vitali, Vice President of Compensation.  At some point in
2004, Rashid began reporting to Randy Reardon, Vice President of

-1-

Learning and Organizational Development.  During the summer of 2006, Rashid began reporting to Thomas Stypulkoski, Human Resources-Director of Compensation.  Shortly after Rashid began reporting to Stypulkoski, Rashid was promoted to Human Resources-Performance and Recognition Manager.  Rashid continued to report to Stypulkoski; both Rashid and Stypulkoski were overseen by Cheryl Patnick, the Vice President of Human Resources at Sovereign.

According to Rashid's testimony, his mother was not in good health in September 2006.  In mid-September, Rashid learned that she would likely need to undergo a surgical procedure in late October and that she would need care following the procedure.[1]  On September 19, 2006, Rashid met with Stypulskoski, his supervisor; the parties agree that this is the first time the two men discussed Rashid's mother's illness.  However, the parties disagree as to what happened during and after the initial meeting, leading up to Rashid's termination.

    1.   <u>September 19, 2006</u>

        a.   <u>Plaintiff's version</u>

---

[1]    Defendants dispute this version of events, pointing to Rashid's mother's medical records.  According to defendants, the records show that the mother was receiving medical care of some sort and had been given blood tests in mid-September.  However, according to defendants, her tests revealed nothing unusual at that point.  The first record to note a need for gall bladder surgery is from mid- to late-October 2006.

On September 19, 2006, Rashid met with Stypulkoski and requested time off.  Rashid testified that the meeting was scheduled for the two men to review the status of Rashid's projects and to discuss time off.  He testified that the meeting went well at first; Stypulkoski was pleased with the progress Rashid was making on his projects.  Following the status report, Rashid told Stypulkoski that he needed to take some time off from work.  Stypulkoski replied that Rashid had already used all of his paid time off and that it would be unfair to other employees for Rashid to take more vacation.  Rashid then explained that he had special circumstances and that he was not asking for paid time off, but only for unpaid leave.

Stypulkoski inquired about the circumstances, noting that he knew Rashid was going through a divorce.  Rashid told him that the leave was unrelated to his divorce and that his mother, who lived in Pakistan, was ill.  She was not doing well and Rashid needed to travel to Pakistan to be with her.  Stypulkoski responded by asking if she was dying; he stated that, if she were dying, it might make sense for Rashid to travel to her.

Rashid testified that, at that point, he became upset and asked Stypulkoski to be more sensitive about his mother's health.  Rashid told Stypulkoski that he did not believe the meeting was going well and that he wanted to ask Cheryl Patnick to join them for the rest of the meeting.  He rose to go find

-3-

Patnick, but Stypulkoski asked him to sit back down because there were more topics to discuss.  When Rashid did so, Stypulkoski changed the topic and began to ask Rashid about his expense reports and his method of recording paid time off.

    b.   Defendant's version

         In contrast to Rashid's version of events, Stypulkoski testified that Rashid requested a meeting with him to discuss vacation.  Rashid first said he would like time off and had some vacation left from the time allotted to him by Sovereign.  After Stypulkoski denied the request, pointing out that Rashid had used his paid time off, Rashid said that he thought he should be entitled to time off as long as his projects were getting done. He said that he viewed Stypulkoski as a mentor and thought Stypulkoski should grant him the time off.  Stypulkoski again denied the request and explained that it would be unfair to other employees to allow Rashid extra vacation.

         Rashid became angry and told Stypulkoski that he really needed the time off.  When Stypulkoski asked him why, Rashid asked Stypulkoski whether he was aware of Rashid's personal issues.  Stypulkoski asked whether Rashid needed the time off because of his divorce; Rashid replied that, yes, his divorce was the reason.  When Stypulkoski said that he could not understand why Rashid would need extra time for a divorce when lots of

-4-

people go through divorces, Rashid said that he needed the time because his mother was sick.

Stypulkoski told Rashid that he thought that Rashid had lost credibility by providing three differing reasons why he needed leave. Stypulkoski told Rashid that if, from the start, he had told Stypulkoski that his mother was seriously ill or dying and that he needed time off, they would have been able to work together to arrange the time. However, this was not what had occurred. Rashid had given a variety of reasons and had only come up with his mother's illness as a last resort. Rashid became "extremely angry" and tried to end the conversation, but Stypulkoski instructed him to stay, saying that Stypulkoski would consider it insubordination if Rashid left.

Stypulkoski then raised an issue that had come to his attention that morning when Cheryl Patnick's assistant, Rosalie, came to Stypulkoski regarding Rashid's expense reports. Rosalie told Stypulkoski that Rashid had asked her to sign Patnick's name on an expense report and, when Rosalie said she was not authorized to do so, Rashid repeated his request. Rosalie asked Stypulkoski to address the situation because Rashid's request made her feel "very uncomfortable."

Rashid again became angry and asked whether Stypulkoski was accusing him of cheating. He said he would not be spoken to in that way and that the conversation was over. Stypulkoski told

-5-

Rashid that he should return to his office at Villanova rather than staying to attend the afternoon meeting.  He told Rashid that his behavior would have to be addressed.

    2.  <u>September 20, 2006</u>

The parties agree that, on September 20, 2006, a follow-up meeting was held with Rashid, Stypulkoski, and Donna Forcey.  Rashid testified that he believed that the meeting was to address his leave request.  However, at the meeting, Stypulkoski reviewed the problems that he had raised to Rashid the day before (expense reports and recording vacation).  He also questioned the propriety of a laptop purchase for one of Rashid's subordinates.  Rashid asked Forcey why all these issues were being raised when there had never been a problem in the past, and also asked that he be given a chance to explain his view of things so that Stypulkoski's concerns could be alleviated. Rashid reminded Forcey that the purpose of the meeting was to address his leave request, which remained outstanding from the day before.

Again, defendant presents a different version of events.  According to defendant, the purpose of the meeting on September 20 was to address Rashid's insubordination the day before and to address all remaining open issues.  Defendant claims that Rashid was again insubordinate on September 20 and

-6-

behaved belligerently during the meeting.  Defendant agrees, though, that Rashid's request for time off because of his mother's illness was not discussed during the meeting.

### 3.   September 21, 2006

On September 21, 2006, Rashid was summoned to another meeting with Forcey and Stypulkoski where he was told that, in light of the events of the past two days, his services were no longer required by Sovereign.  Rashid was offered the opportunity to resign and receive four weeks severance pay.  Rashid expressed to Forcey that, based on his knowledge of severance packages given in the past, four weeks severance was insufficient for a person who held his position.

### B.   The Complaint

Rashid asserts a claim for violation of the FMLA, 29 U.S.C. § 2601 et seq.  Rashid claims that Sovereign interfered with his right to take leave under the FMLA.

## II.  MOTION FOR SUMMARY JUDGMENT

### A.   Summary Judgment Standard

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and

that the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(c).  A fact is "material" if its existence or
non-existence would affect the outcome of the suit under
governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242,
248 (1986).  An issue of fact is "genuine" when there is
sufficient evidence from which a reasonable jury could find in
favor of the non-moving party regarding the existence of that
fact.  Id. at 248-49.  "In considering the evidence, the court
should draw all reasonable inferences against the moving party."
El v. Se. Pa. Transp. Auth., 479 F.3d 232, 238 (3d Cir. 2007).

     "Although the initial burden is on the summary judgment
movant to show the absence of a genuine issue of material fact,
'the burden on the moving party may be discharged by showing--
that is, pointing out to the district court--that there is an
absence of evidence to support the nonmoving party's case' when
the nonmoving party bears the ultimate burden of proof."
Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 140 (3d
Cir. 2004) (quoting Singletary v. Pa. Dep't of Corr., 266 F.3d
186, 192 n.2 (3d Cir. 2001)).  Once the moving party has thus
discharged its burden, the nonmoving party "may not rely merely
on allegations or denials in its own pleading; rather, its
response must--by affidavits or as otherwise provided in [Rule
56]--set out specific facts showing a genuine issue for trial."
Fed. R. Civ. P. 56(e)(2).

B.    FMLA

The FMLA was created to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons."  29 U.S.C. § 2601(b)(1)-(2).  The statute endeavors to accomplish these purposes "in a manner that accommodates the legitimate interests of employers."  29 U.S.C. § 2601(b)(3).

The FMLA contains two types of provisions.  Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005).  "First, it creates a series of prescriptive substantive rights for eligible employees, often referred to as the 'entitlement' or 'interference' provisions which set floors for employer conduct."  Id.  The statute provides that an eligible employee may take up to "twelve workweeks of leave during any twelve-month period" "[i]n order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition."  29 U.S.C. § 2612(a)(1)(C).  Following a qualified absence, the employee is entitled to be reinstated to the former position or an alternate one with equivalent pay, benefits and working conditions.  § 2614(a)(1).

"Additionally, the FMLA provides protection against discrimination based on the exercise of these rights, often referred to as the 'discrimination' or 'retaliation' provisions."  Callison, 430 F.3d at 119; see 29 U.S.C. § 2615(a)(1)-(2); 29

-9-

C.F.R. § 825.220(c) ("An employer is prohibited from discriminating against employees . . . who have used FMLA leave."); id. (prohibiting consideration of "the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions").

To present a claim under the FMLA's interference provisions,[2] a plaintiff must show that (1) he is an eligible employee under the FMLA, 29 U.S.C. § 2611(2); (2) defendant is an employer subject to the requirements of the FMLA, § 2611(4); (3) plaintiff was entitled to leave under the FMLA, § 2612(a)(1)(C); (4) plaintiff gave notice to the defendant of his intention to take FMLA leave, § 2612(e); and (5) defendant denied him the benefits to which he was entitled under the FMLA, §§ 2612, 2614. See Parker v. Hahnemann Univ. Hosp., 234 F. Supp. 2d 478, 483-84 (D.N.J. 2002). "Under this theory, the employee need not show

---

[2]     This case implicates only the interference provisions of the FMLA.  Rashid claims that he was eligible for benefits under the FMLA and that Sovereign interfered with his use of those benefits by refusing to allow him to take leave and by terminating his employment immediately after his request for leave.
        Although the complaint includes only a single claim for interference with Rashid's rights under the FMLA, Rashid argues in his brief opposing summary judgment that Sovereign retaliated against him, in addition to interfering with his FMLA rights. The facts alleged by Rashid, however, do not implicate the retaliation provisions of the FMLA, which protect employees who take FMLA leave and are later singled out for adverse employment action because they took leave.  Rashid was prevented from ever taking leave and, therefore, could not have been retaliated against for leave-taking.

that he was treated differently than others.  Further, the employer cannot justify its actions by establishing a legitimate business purpose for its decision." Callison, 430 F.3d at 119-20.

C. Application

The parties agree that, at the time of his termination, Rashid was an eligible employee and Sovereign was an employer within the meaning of the FMLA.  The remaining questions are 1) whether Rashid was entitled to leave under the FMLA; 2) if he was entitled to leave, whether he placed Sovereign on notice of that fact; and 3) whether Sovereign denied him leave to which he was entitled.  Sovereign argues that summary judgment should be granted because Rashid cannot meet any of the three requirements listed above.

1. Entitlement to leave

Sovereign argues that Rashid cannot prove that he was eligible for leave under the FMLA as of September 19, 2006 because Rashid's mother's illness and need for surgery was not yet known at that time.  Sovereign is not entitled to summary judgment based on Rashid's eligibility for leave because there is a genuine issue of material fact as to whether Rashid was eligible for leave on September 19, 2006 when he requested the

-11-

leave.

An employer is required to grant an employee leave for the employee to care for a parent with a "serious health condition."  29 C.F.R. § 825.112.  A "serious health condition" includes "continuing treatment by a health care provider," which in turn may include "a period of incapacity of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition that also involves . . . either [t]reatment two or more times by a health care provider or [t]reatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider."  29 C.F.R. § 825.114(a)(2).

In support of his claim, Rashid has produced the following evidence.  First, he points to his own testimony at deposition that, in mid-September, he became aware that his mother was going to need a procedure because of her ongoing abdomen pain and that the procedure would take place sometime in late October.[3]  He testified that this knowledge motivated him to request a meeting with Stypulkoski.  Second, Rashid's mother's

---

[3]     Defendant's motion for summary judgment acknowledges this testimony but argues that it is undermined by medical records that do not show a need for surgery until sometime in October.  Assuming arguendo that the records could be interpreted as contradicting Rashid's testimony rather than simply supplementing it, defendant has merely identified an issue of fact that must be resolved at trial.

medical records show that she received laboratory tests in
September 2006, corroborating Rashid's testimony that she was
under a doctor's care at this time.  Third, there is a record
from Noor Hospital, where Rashid's mother was being treated, that
appears to show a diagnosis of gall stones.  The date on the
record is obscured, but the record can be interpreted to support
Rashid's claim that his mother had a serious health condition.
Finally, it is undisputed that Rashid's mother did receive
surgery in late October.  Plaintiff's medical expert states that
Rashid's mother was placed on bed rest for four weeks following
her surgery and would have required assistance in caring for
herself during that time.  Ex. G, Pl.'s Opp. Summ. J.  This
period greatly exceeds the three-day period of incapacity
required and, in combination with ongoing doctor's care,
constitutes a serious health condition for purposes of the FMLA.

        There is a genuine issue of material fact as to whether
Rashid's mother was suffering from a "serious health condition"
because there is evidence sufficient to allow a reasonable jury
to find in Rashid's favor on this issue.  Therefore, the motion
for summary judgment on the ground that Rashid was not entitled
to FMLA leave will be denied.


        2.   Notice of leave request

        Sovereign next argues that Rashid failed to place it on

-13-

notice of his need for FMLA leave.  "[A]n employee need not give
his employer a formal written request for anticipated leave.
Simple verbal notification is sufficient." Sarnowski v. Air
Brooke Limousine, Inc., 510 F.3d 398, 402 (3d Cir. 2007).  "'The
employee need not expressly assert rights under the FMLA or even
mention the FMLA.'"  Id. (quoting 29 C.F.R. § 825.208(a)(2)).
Rather, "'[t]he critical question is whether the information
imparted to the employer is sufficient to reasonably apprise it
of the employee's request to take time off for a serious health
condition.'"  Id. (quoting Manuel v. Westlake Polymers Corp., 66
F.3d 758, 764 (5th Cir. 1995)).

Rashid testified at his deposition that, at the
September 19, 2006 meeting, he requested that he be granted leave
to care for his sick mother who was having health problems and
would need a medical procedure.[4]  Because this evidence is

_____

[4]      The description of events in Sovereign's motion
suggests that Sovereign did not believe that Rashid was being
truthful regarding the reason he wanted leave, not that Sovereign
had no notice of Rashid's need for leave.  Stypulkoski testified
that Rashid provided a number of reasons why he should be granted
leave, including a desire to travel to Paris and his ongoing
divorce.  For purposes of summary judgment, Rashid's testimony
that he asked for leave to care for his mother immediately and
without mentioning conflicting reasons will be credited.
However, the Court also notes that, if Sovereign disbelieved
Rashid, the law provides for measures to probe an employee's need
for leave before granting or denying the leave request.
Consistent with the FMLA, Stypulkoski could have requested that
Rashid provide a certification from his mother's health care
provider that attested to her serious health condition and her
need for care.  29 U.S.C. § 2615(c)(3)(i).

-14-

sufficient to permit a reasonable jury to find in Rashid's favor on the question of notice, there is a genuine issue of material fact and summary judgment must be denied.

    3.   <u>Denial of leave</u>

Finally, Sovereign argues that, because Rashid's request for leave was not addressed during the meetings following the September 19, 2006 meeting, Rashid cannot prove that Sovereign denied Rashid leave to which he was entitled.  Section 2615(a)(2) of the FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]."  29 U.S.C. § 2615(a)(2).

"'Interfering with' the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." <u>Conoshenti</u>, 364 F.3d at 142.  Rashid testified that Stypulkoski and Forcey refused to address his need for leave despite his repeated request that they do so.  Moreover, he was fired very shortly after his request for leave.  Because there is sufficient evidence that a reasonable jury could conclude that Sovereign interfered with Rashid's right to FMLA leave, there is a genuine issue of material fact and summary judgment must be denied.

III. CONCLUSION

      For the aforementioned reasons, defendant's motion for summary judgment will be denied.  An appropriate order follows.